Prompt Med. Supply Inc v Metropolitan Gen. Ins Co. (2024 NY Slip Op 50654(U))

[*1]

Prompt Med. Supply Inc v Metropolitan Gen. Ins Co.

2024 NY Slip Op 50654(U)

Decided on May 31, 2024

Civil Court Of The City Of New York, Kings County

Roper, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 31, 2024
Civil Court of the City of New York, Kings County

Prompt Medical Supply Inc AAO Nabintou Cherif, Plaintiff,

against
Metropolitan General Ins Co., Defendants.

Index No. CV-727122-18/KI

Mikhail Kopelevich, Esq.
Feldsherova Kopelevich
882 Third Avenue, 3rd Floor, Ste Ne1
Brooklyn, NY 11232
(718) 332 0577
Counsel for Plaintiff
Barbara Litcher-Butler, Esq.
Bruno, Gerbino & Soriano, LLP
445 Broad Hollow Road, Suite 220
Melville, NY 11747
(201) 995-1394
Counsel for Defendant

Sandra Elena Roper, J.

RECITATION, AS REQUIRED BY CPLR 2219(a), 
OF THE PAPERS CONSIDERED IN THE REVIEW OF THIS MOTION
NOTICE OF MOTION & AFFIDAVIT OF SERVICE 1-2
AFFIRMATION IN SUPPORT & EXH. ANNEXED 3-4
AFFIRMATION IN OPPOSITION - 5
AFFIRMATION IN REPLY - 6
Defendant Post-Oral Argument Memorandum of Law - 7
Plaintiff Default Judgment Application 8/3/2018 - 8
INTRODUCTION
Defendant moves This Honorable Court by Notice of Motion to Vacate Entry of Default Judgment by Plaintiff pursuant to CPLR 5105 (a), to allow Defendant an extension of time to file a late Answer pursuant to CPLR 3012 (d), dismiss claim in the entirety pursuant to the Doctrine [*2]of Res Judicata and Collateral Estoppel by New Jersey Superior Court Declaratory Judgment finding lack of no-fault coverage pursuant to US Constitution Full Faith and Credit Clause, article IV, § 1 and New York CPLR 5401, and for such other and further relief deemed just and proper.
PROCEDURAL AND FACTUAL HISTORY
Plaintiff medical provider Prompt Medical Supply, Inc. commenced this No-Fault action against Insurer Defendant Metropolitan General Insurance Company (hereinafter referred to as METLIFE) for payment reimbursement for medical services rendered to assignor, Nabintou Cherif for injuries allegedly sustained as a result of a motor vehicle accident (hereinafter referred to as MVA), upon filing summons and complaint with clerk of court on June 20, 2018. The MVA at issue occurred on or about December 17, 2016, resulting in Plaintiff rendering medical services to alleged EIP-Assignor. Although summons and complaint is dated September 6, 2017, it was not filed with the clerk of court until June 20, 2018, and service effectuated on June 27, 2018. Defendant's Verified Answer with Combined Demands by affidavit of Service states that service upon Plaintiff was effectuated by mail on or about the 26th day of July 2018. Whereas, the Kings County Clerk Files states in its "PAPERS RECORDED" section of this case summary file, "07/31/2018 Answer filed (Attorney), Filed by: (D)". Nevertheless, by letter dated August 13, 2018, Plaintiff rejected Defendant's Answer as untimely after having filed with the clerk of court for Default Judgment pursuant to CPLR 3215(f) which does not require service nor notice upon allegedly defaulted Defendant. Defendant's counsel alleges that it was never informed that Verified Answer was being rejected by the clerk of court after having been filed on 7/31/2018, nor received any notice of default judgment application. Thus, although Defendant undeniably filed its Answer with the clerk of court on July 31, 2018, no notice of Plaintiff's filing of default judgment application was provided to Defendant. Thereafter, Default Judgment was subsequently entered by the clerk of court on August 17, 2018. Plaintiff then served upon Defendant the Notice of Entry on August 23, 2018. Of note, the default judgment application was provided by Plaintiff in post-oral argument period to opposing counsel and This Court. Defendant moved to Vacate Default Judgment On or about December 11, 2019. In the interim, Defendant-Insurer filed Complaint in the New Jersey Superior Court case titled, Metropolitan Property & Casualty Insurance Company v. Nabintou Cherif, et al, Dochet No.: SOM-L-505-20, against Plaintiff-Provider and its Assignor, et al for Declaratory Judgment of no insurance coverage for medical/no-fault treatment/PIP treatment for the relevant accident on December 18, 2016. The DJ Complaint alleged that before the accident, on July 26, 2016, the previous Insured-Owner of the subject vehicle removed insurance coverage by Defendant-Insurer. Thereafter, the subject vehicle was repossessed and sold prior to October 20, 2016, and therefore this vehicle was not insured by Defendant-Insurer on December 18, 2016, date of accident. By Decision and Order dated June 11, 2021, Hon. Thomas C. Miller held on default that Defendant-Insurer was not liable for medical/no-fault treatment/PIP treatment coverage for the subject vehicle on December 18, 2016, date of accident. Thereafter, Defendant-Insurer's motion to vacate judgment in this case at bar was denied without prejudice on April 28, 2022, on procedural grounds for failing to comply with the January 8, 2021, directives and memorandum issued by the Supervising Judge of the Civil Court, Kings County. Defendant re-filed the instant Motion which was adjourned to September 27, 2022, February 14, 2024, and on March 19, 2024 oral arguments heard. This Court ordered Parties to file memorandum of law specifically on the issue of the Doctrine of Res Judicata and Collateral Estoppel of foreign Declaratory Judgment of [*3]lack of No-Fault Coverage due by April 2, 2024. Plaintiff failed to comply with order and filed abbreviated letter, which is rejected as untimely and not considered. Decision was reserved.
DISCUSSION
 DEFAULT JUDGMENT VACATURE
It is well established that public policy strongly favors matters at law in controversy be decided on the merits and not merely procedural grounds. It is within the broad judicial discretion in the interest of justice where, as here, although Plaintiff alleges that it did not receive Defendant's Verified Answer until August 13, 2018, Defendant filed with the clerk of court its Verified Answer on 7/31/2018, which Plaintiff admittedly states is the expiration date for service of the Answer. The alleged 13-day delay in Plaintiff's receipt of the Verified Answer is de minimis, not willful as evidenced by the 7/31/2018 filing date with the clerk of court and did not cause any prejudice to the Plaintiff. Thus, Plaintiff's Default Judgment filed on August 3, 2018, 3 days after Defendant filed its Verified Answer on 7/31/2018 with the clerk of court, entered August 17, 2018, and served by Plaintiff upon Defendant on August 23, 2018, is hereby Vacated. Plaintiff is ordered compelled to accept Defendant's Verified Answer and Combined Demands dated July 26, 2018, filed with the clerk of court on July 31, 2018, and which is hereby deemed as served August 13, 2018, nunc pro tunc .

 RES JUDICATA AND COLLATERAL ESTOPPEL DISMISSAL
Res judicata with its attenuated narrower sub-genre collateral estoppel,[FN1]
is a universal sine qua non core of the judiciary's administration of justice, no matter how primitive. Res judicata provides order within the social construct of a judicial system of a nation. Indeed, hearkening back to ancient emerging judicial systems predating the Roman Law, which codified "exceptio rei iudicatae"[FN2]
translated as "an objection to the adjudicated matter."[FN3]
The early courts' specific nomenclature may differ from res judicata, entire claim preclusion, or collateral estoppel, singular issue preclusion, but the spirit and application of the legal doctrine thereof is the same. It serves the broader overarching macro societal public interest in the world order to promote peace and quiet in the conclusive finality of claims previously adjudged, with [*4]consequential judicial economy and efficiency in the administration of justice (see Marsh v Pier, 4 Rawle [Pa] 273 [1833]). Whereas res judicata's micro interest is in the finality of previously adjudged claims to the natural or juridical litigant, as a restraint and check on the innate human nature's selfish proclivities. Without which, there would be abject unchecked chaos in the relitigating of adjudged claims to literally grind any judicial system to a log jam. But for res judicata, the disgruntled, aggrieved non-victor would possess unfettered unrestrained opportunities to relitigate previously adjudged claims in a potentially unending loop until he is successful as victor for the very same previously adjudged claim. Similarly, human nature would vice versa incentivize the initial victor rendered non-victor to further relitigate to the same end, in an endless selfish wasteful judicial loop of relitigating, all to the detriment of the macro societal interest inherent in the doctrine of res judicata (in rem judicata used interchangeably early on).
"The result, among other things, would be, that the tribunals of the state, would be bound to give their time and attention to the trial of new actions, for the same causes, tried once or oftener, in former actions between the same parties or privies, without any limitation, other than the will of the parties litigant, to the great delay and injury, if not exclusion occasionally of other causes, which never have passed in rem judicatam"
(id. at 289). Naturally, but for res judicata, this endless loop of relitigating may only come to an end where the corpus or thing in controversy is extinguished by virtue of the initial adjudicated claim. Illustrative is the bench trial presided by de facto judge King Solomon's verdict that the corpus or thing in controversy, to wit an infant baby boy, be cut in half by the wielding of a sword, and his halved corpse be divvied up to both dueling putative mothers.[FN4]
Most obviously, such a judgment as this forever extinguishes the corpus or thing in controversy to a natural finality of the claim staving off relitigating, notwithstanding a hypothesized absence of the protective jurisdictional preclusive doctrine of res judicata.
Double jeopardy is to criminal law finality as res judicata is to civil law. Although res judicata derives from the common law, whereas double jeopardy derives from the US Constitution Fifth Amendment, the purpose of jurisprudential finality of claim is the same, deriving an overarching macro societal and micro individual litigant interest. Unsurprisingly, yet most distressing and an indelible stain upon the human sensibility, the early US cases involved the country's original sin of chattel slavery, competing ownership claims of Three-Fifths of a person pursuant to the US Constitution, article I, § 2. However, but a mere two decades after the Declaration of Independence, one of the very first US claims invoking res judicata actually dealt with slavery of another ethnicity of human beings, namely an Indigenous American Indian; whether he was free or a slave owned by a master because it was previously adjudged that his [*5]mother was a slave and the law at the time was that he derived his dehumanizing birthright status as a slave from his mother. The court morally opined, yet in strict adherence to the morally reprehensible de jure law held, "It has been contended in this case that liberty is to be favored. This is true, but the court cannot on that, or on any favored subject infringe the settled rules of law" (Shelton v Barbour, 2 Wash [2 Va] 64 [1795]). In so holding, the law of res judicata was invoked such that the previous judgment of his mother would in effect maintain his status as a slave, unless he can prove at retrial that he had been manumitted prior to the initially adjudged verdict finding his mother was a slave. Two decades subsequently, John Marshall's SCOTUS ruled on the application of the law of res judicata (in rem judicata used interchangeably early on) in which it held:
"It has been long since established that under non assumpsit the Defendant may give in evidence any thing which shows that no debt was due at the time when the action was commenced, whether it arise from an inherent defect in the original promise or a subsequent discharge and satisfaction. And the precise point now in controversy has been adjudged to be completely within the rule. If the former judgment had been for the Plaintiff, there would be no doubt that it would have extinguished the demand; and it is not less conclusive because it was for the Defendant. The controversy had passed in rem judicatam, and the identity of the causes of action being once established, the law would not suffer them again to be drawn into question"
(Young v Black, 7 Cranch [11 US] 565 [1813]). Res judicata preclusion of claim relitigating does not apply to the appeals process of that same claim to jurisprudentially higher appellate courts. From the common law of the Kings Bench res judicata has also been held to be invoked internationally for the preclusive claim principle of the law to varying degrees.
"Thus far have I been disposed to consider this case upon principle, and as res integra; but I think it is also decided conclusively by authority. This proposition I think to be universally true,  that a person in all cases is concluded by a decree, sentence, or judgment, of a court of competent and exclusive jurisdiction, in a suit in which he was a party, in all future trials of the same question; and whether that question arises directly or collaterally, provided there be no contract between the parties to the contrary; and that it is indifferent, whether the court making such decree, sentence, or judgment, be foreign or domestic. It is conclusive not only of the right, which it establishes, but of the fact, which it directly decides. This was, I think, established and well known as a principle of English law, at and long previous to the revolution"
(Baxter v New Eng. Mar. Ins. Co., 6 Tyng [6 Mass] 277, 286 [1810]). Wherever applied, foreign or domestic, ancient or modern the elements of res judicata have remained consistent.
"In New York, res judicata, or claim preclusion, bars successive litigation based upon the "same transaction or series of connected transactions" (see Siegel, NY Prac § 447 [4th ed]) if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was"
(Matter of People of the State of NY, by Eliot Spitzer, as Attorney Gen. v Applied Card Sys., Inc., 11 NY3d 105, 122 [2008] citing Gramatan Home Invs. Corp. v Lopez, 46 NY2d 481, 485, 386 NE2d 1328, 414 NYS2d 308 [1979]; Weinstein-Korn-Miller, NY Civ Prac P 5011.08 [2d ed]).
In the instant matter, it is uncontested that the New Jersey Superior Court is a court of competent jurisdiction in Equity. Whereas This Court presiding in the instant matter is a lower [*6]trial court with limited subject matter jurisdiction, devoid of jurisdiction in Equity. Thus, it is incontrovertible that the New Jersey Superior Court is within its jurisdiction to adjudge the Declaratory Judgment herein at issue. Plaintiff-Provider's argument as to the court's lack of in personam jurisdiction fails in providing any substantive proffered evidence to the contrary and this challenge should have been made in the New Jersey Superior Court forum exercising such jurisdiction. It is not within This Court's limited jurisdiction to rule on the in personam jurisdiction in the New Jersey Superior Court, until and unless a New York State Court of competent jurisdiction adjudges otherwise. Thus, theoretically This Court must abide by New Jersey Superior Court's exercise of jurisdiction rendering Plaintiff-Provider as a party to the previously adjudged Declaratory Judgment, having had full and fair opportunity to litigate its defenses and counterclaims in the New Jersey Superior Court. Here, there is identical parties, identical subject matter before This Court, whether Plaintiff-Provider is entitled to no-fault benefit reimbursement from Defendant-Insurer for the same date of incident, the same alleged insureds, the same repossessed vehicle, and the same alleged EIP-assignor. Upon being served with New Jersey Superior Court's summons and complaint and thereafter being served with motion for default judgment of the claim, Plaintiff-Provider chose to sit idly by and allowed the New Jersey Superior Court's identical claim to be decided by default. Plaintiff-Provider's arguments being made herein this instant matter could have and should have been made by Plaintiff-Provider in the initial claim in the New Jersey Superior Court. A defaulting movant may not merely "sit idly by" allow a default in a court of competent jurisdiction and then attempt to benefit from its inaction (see SZ Med., P.C. v Erie Ins. Co., 24 Misc 3d 126[A], 2009 NY Slip Op 51221[U] [App Term 2009]). Plaintiff-Provider's cited cases arguing against res judicata in default are distinguishable; where movant party was not named nor served in the initial declaratory judgment action (see Magic Recovery Med. & Surgical Supply Inc. v State Farm Mut. Auto. Ins. Co., 27 Misc 3d 67, 68 [App Term 2010]) unlike herein where all identical parties were served; and where the Court of Appeals denied res judicata preclusion of claim based upon a singular issue that was found to not have been litigated at trial, yet granting collateral estoppel preclusion of specific issues that were fully litigated in the initial judgment (see Kaufman v Eli Lilly & Co., 65 NY2d 449 [1985]), unlike herein where the entire claim was fully litigated and adjudged accordingly. Moreover, this sort of litigation tactic is so wasteful, inimical, and antithetical to the very universal core principles of res judicata in the finality, jurisprudential economy, efficiency, and in direct contravention of res judicata's macro and micro interests from its very inception in the annals of ancient jurisprudence. Non-victor Plaintiff-Provider sat idly by and now attempts to relitigate the very same claim in a second bite of the apple for a favorable judgment inconsistent with the previously adjudged New Jersey Superior Court's Declaratory Judgment against it. Defendant-Insurer most persuasively cites This Court's previous holding as to the primacy of declaratory judgments; "This Court is mandated and shall take judicial notice Sua Sponte of any DJ actions duly entered in courts of superior jurisdiction, as is herein, that may be attendant or relevant to the instant action before it, from any source during its deliberation, whether neither party brings it to This Court's attention" (Primavera Physical Therapy, P.C. v State Farm Ins. Co., 82 Misc 3d 1211[A], 2024 NY Slip Op 50276[U] [Civ Ct, Kings County 2024]). Thus, Declaratory Judgment has been held to having been made on the merits even in default.
Except, notwithstanding all the foregoing: "The New York Legislature, however, enacted a statute somewhat more restrictive than those enacted elsewhere, in that the expression 'foreign [*7]judgment' as used in the statute excludes 'one obtained by default in appearance, or by confession of judgment'" (Port Realty Dev. Corp. v NMS Indus., Inc., 88 Misc 2d 220 [Sup Ct, NY County 1976], citing CPLR 5401). Thus, stripping the effect of a sister state foreign judgment on default as a judgment at all not entitled to coverage by the US Constitution Full Faith and Credit Clause, article IV, § 1 for judicial proceedings of sister states. New York State deemed it necessary to in effect statutorily restrict the import and application of res judicata to foreign sister state and international default judgments where the opposing party thereof never appeared "at all" pursuant to CPLR 5401:
"The 1968 Uniform Enforcement of Foreign Judgments Act, from which article 54 was taken, does not exclude filing a judgment of a sister State taken by default. The committee to advise and consult with the Judicial Conference on the CPLR, in urging the adoption in New York State of the 1968 Uniform Enforcement of Foreign Judgments Act, recommended that the act not apply to judgments 'in which there was no appearance by the defendant in the rendering forum.' (Fifteenth Annual Report of NY Judicial Conference, 1970, Appendix D, Report to Legislature in Relation to CPLR, p A107.) This recommendation was based upon the committee's fear of 'sewer service' (p A107). As submitted by the committee, proposed article 54 excludes from its scope judgments obtained by 'default in appearance'. CPLR 320 states that the defendant 'appears by serving an answer or a notice of appearance'. It is apparent from the committee's report that it intended to exclude not all judgments taken by default, but only those default judgments where there is no appearance at all in the action. Since the defendant did appear in the action in Georgia, the Georgia judgment may not be refused recognition under article 54 because of the default of the defendant in appearing at the time of trial."
(L & W A.C. Co. v Varsity Inn of Rochester, Inc., 82 Misc 2d 937, 939 [Sup Ct, Monroe County 1975]). Although there is sparse case law on the CPLR 5401 restriction, nevertheless the legislative history and the sparse case law having not been overturned has withstood. Defendant-Insurer's reliance on Harvester is misplaced since the judgment at issue therein was not on default (Harvester Chem. Corp. v Aetna Cas. & Sur. Co., 212 AD2d 392, 394 [1st Dept 1995]). In this instant matter, Plaintiff-Provider never appeared "at all" resulting in a default Declaratory Judgment in the sister state New Jersey Superior Court. Therefore, notwithstanding the US Constitution Full Faith and Credit Clause, article IV, § 1, pursuant to New York State CPLR 5401, the New Jersey Superior Court Declaratory Judgment cannot be afforded full faith and credit herein to apply the doctrine of res judicata to dismiss the instant claim in its entirety.
For the foregoing reasons, This Court finds that Defendant's Motion to Vacate Default Judgment pursuant to CPLR 5105 (a) is hereby GRANTED; to allow Defendant an extension of time to file a late Answer pursuant to CPLR 3012 (d) is hereby GRANTED; to dismiss claim in the entirety pursuant to the Doctrine of Res Judicata and Collateral Estoppel by New Jersey Superior Court Declaratory Judgment finding lack of no-fault coverage pursuant to US Constitution Full Faith and Credit Clause, article IV, § 1 and New York State CPLR 5401 is hereby DENIED. Defendant's Answer is deemed Served as of August 13, 2018, nunc pro tunc.
This constitutes the opinion, decision, and order of This Honorable Court.
Dated: May 31, 2024
Brooklyn, New York
SO ORDERED:
SANDRA ELENA ROPER
Judge of the Civil Court

Footnotes

Footnote 1:Res judicata, claim preclusion, cannot be applied as law without collateral estoppel, issue preclusion. In contrast, collateral estoppel can stand alone for previously adjudged itemized parsed out specific issue finality. Thus, res judicata by its very doctrinal definition includes collateral estoppel without specifically including the nomenclature collateral estoppel when referencing res judicata. When res judicata fails in the finality of the entirety of the claim preclusion, then, collateral estoppel may yet stand alone for the finality of specifically designated issues contained within the failed claim preclusion.

Footnote 2:RES JUDICATA, ROBERT VON MOSCHZISKER, citing Broom, LEGAL Maxims,* 327 et scq., 
https://openyls.law.yale.edu/bitstream/handle/20.500.13051/12134/25_38YaleLJ299_1928_1929_.pdf?sequence=2&isAllowed=y.

Footnote 3:"An argument that a claim should be dismissed based on a previous binding judgment or award between the parties dealing with the same subject matter" Oxford Reference, 
https://www.oxfordreference.com/display/10.1093/acref/9780195369380.001.0001/acref-9780195369380-e-736#:~:text=%E2%80%9CAn%20objection%20to%20the%20adjudicated,.%20...%20.

Footnote 4:Judge King Solomon reversed his interim order upon the odious reaction of one obviously NOT the mother jubilantly assenting to the heinous verdict, whereas the other loving obviously the mother was most upset by his ruling and withdrew her petition in order to save the life of her infant son. Therefore, in his judicial role as trier of fact and of law, sua sponte reversed his decision and ordered that the infant baby boy be spared and given to the loving mother who had withdrew her petition. No DNA required here. [This scenario here recounted is merely illustrative and not intended as any religious proselytization.] Verdict rendered somewhere in the vicinity of 970 to 930 BC: The Bible, 1 Kings 3:16-28,